IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00676- STV

RAMON ORTEGA,

　　Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

　　Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

　　This matter is before the Court on Plaintiff Ramon Ortega's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits ("SSI") under Title XVI of the SSA, 42 U.S.C. § 1381 *et seq.* [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. 636(c) and D.C.COLO.LCivR 72.2. [#14] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#12], the parties' briefing [# 19, 20], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **REVERSES** the

Commissioner's decision and **REMANDS** this matter for further proceedings consistent with this Order.

I.  **LEGAL STANDARD**

   A.  **Five-Step Process for Determining Disability**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

---

[1] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

2

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[2]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any;[3]

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

---

[2] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[3] Past relevant work is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1); 416.960(b)(1); *see also* 20 C.F.R. §§ 404.1565(a); 416.965(a).

## B. Standard of Review

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II. BACKGROUND

Plaintiff was born in 1964. [AR 36, 307, 309][4] Plaintiff has a General Equivalency Degree ("GED") and took some college classes, but stopped attending college as a result of an inability to concentrate due to headaches. [AR 48] Although an interpreter was present at the hearing before an Administrative Law Judge ("ALJ"), Plaintiff's attorney stated that Plaintiff's English was "pretty good" [AR 46] and Plaintiff testified in English [AR 46-55]. On May 28, 2013, Plaintiff protectively filed an application for DIB and, on January 15, 2014, Plaintiff protectively filed an application for SSI. [AR 307-15] In both applications, Plaintiff claimed a disability onset date of December 1, 2007, and thus Plaintiff was 43 years old at the time of the alleged onset.[5] [AR 307, 309] Plaintiff claims disability based upon physical and mental impairments, including, but not limited to, degenerative disc disease of the lumbar spine, obesity, asthma, sleep apnea, gastroesophageal reflux disease ("GERD"), right shoulder impairments, affective disorder, and vertigo. [AR 30-31] Plaintiff had previously worked as a maintenance engineer and as an automobile body repairer, but has not performed that work since December 1, 2007. [AR 36, 53, 368] Plaintiff had not performed any work for the two to three years preceding the ALJ hearing. [AR 53, 362]

---

[4] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case. [#12]

[5] Plaintiff previously filed a claim for SSI and DIB which was denied on December 28, 2011 based upon the ALJ's determination that Plaintiff was not under a disability from December 15, 2007 through December 28, 2011. [AR 27, 82] In the March 30, 2016 Decision that serves as the basis for this appeal, the ALJ found "that the record include[d] no new and material evidence or other basis for reopening the prior decision." [AR 27] As a result, the ALJ dismissed Plaintiff's request for a hearing to the extent it related to the period of time on or before December 28, 2011, and only considered the period beginning December 29, 2011 through the date of the Decision. [*Id.*] Plaintiff has not claimed error with respect to that portion of the Decision.

### A. Medical Background

Plaintiff is 5 foot, eight inches tall, and weighs 245 pounds. [AR 55] Plaintiff complains primarily of lower back pain, sharp pain in the right hip, and pain in both shoulders. [AR 47, 383] With respect to Plaintiff's back pain, a July 2009 radiograph examination revealed a chronic appearing, moderate compression fracture of the L4 vertebral body. [AR 428, 434] The examination also revealed osteophytes at the L4 endplate and smaller ones along the L5 vertebral body. [*Id.*] Finally, the examination showed evidence of mild lower lumbar facet sclerosis. [*Id.*]

Charlene Borja, D.O. conducted a consultative physical examination of Plaintiff in July 2009. [AR 429-435] Dr. Borja noted that Plaintiff had lower back pain that radiates down his bilateral legs with associated burning, numbness and tingling. [AR 429] Standing, sitting or walking for long periods of time exacerbated the pain, as did walking stairs. [*Id.*] Dr. Borja noted that Plaintiff was able to get out of bed, dress himself, bathe himself, cook, clean and drive, though Plaintiff described all of these functions as difficult. [AR 430] Dr. Borja further noted that Plaintiff was not in any acute distress and sat comfortably during the exam. [AR 431] Plaintiff was able to stand and walk on his heels and toes and there were no noted ambulation problems. [AR 432] A spinal examination revealed a lack of any cervical, thoracic, lumbar, or sacral spinous process tenderness to palpation. [AR 433]

A June 17, 2010, Magnetic Imaging Report ("MRI") revealed a chronically fractured L4 vertebra with approximately 50 percent loss of height and moderate retropulsion, causing borderline central canal stenosis just below the L3-4 disc level. [AR 436] The MRI also revealed degenerative changes associated with the discs above

and below the fractured L4 vertebra, along with milder changes at the L5-S1. [*Id.*] Specifically, the MRI revealed disc bulging and disc osteophyte complex above and below the chronically fractured L4 vertebra. [AR 437]

A July 9, 2012 examination noted continued lower back pain, but indicated that the pain was stable. [AR 462-463] Plaintiff described the pain as an ache, but denied any radiation of the pain. [AR 463] Plaintiff sought pain medication for his back pain. [*Id.*]

A January 9, 2013 physical examination noted chronic lower back pain. [AR 452] During the examination, Plaintiff was able to heel-and-toe walk and there was no abnormality in Plaintiff's gait. [AR 453] The examination further indicated that Plaintiff's lower extremity muscle tone was normal and that his paraspinous muscle tone was normal. [*Id.*] Orthopedic records from an August 28, 2014 appointment indicate that Plaintiff did not report any back pain. [AR 563]

In addition to his back pain, Plaintiff complains of pain in both shoulders. Plaintiff testified that he has a tear in his right rotator cuff and can only raise his right shoulder chest high.[6] [AR 49] A June 18, 2013 examination, however, revealed active, pain free and normal range of motion in the right shoulder. [AR 443] That same examination stated that Plaintiff's bilateral upper extremity strength was normal. [*Id.*] A January 30, 2014 examination likewise revealed normal strength and range of motion in Plaintiff's right shoulder. [AR 543-544] An August 28, 2014 orthopedic examination referenced "a left rotator cuff with a right rotator cuff impingement," but only recommended treatment for the left shoulder. [AR 564]

---

[6] As detailed below, the medical records indicate that the tear was in Plaintiff's left shoulder.

7

Plaintiff testified that he had left shoulder surgery but his left shoulder still occasionally locked up. [AR 50] An MRI of Plaintiff's left shoulder from August 2014 revealed a partial thickness tear of the supraspinatous tendon. [AR 565] The plan at that time was for Plaintiff to participate in physical therapy to increase his range of motion. [AR 564] Notes from a follow-up appointment in October 2014 indicated that Plaintiff was still experiencing pain and some stiffness in the left shoulder. [AR 566] Because physical therapy and corticosteroid injections had not worked, the plan was to refer Plaintiff for surgery. [AR 567] On November 26, 2014, Plaintiff underwent left shoulder surgery and the surgical report revealed no complications. [AR 573-574]

Although Plaintiff did not describe hip pain during his testimony before the ALJ, his January 9, 2013 annual physical also indicated right hip pain and occasional left hip pain. [AR 452] Furthermore, on February 5, 2013, Plaintiff went to Peak Vista Community Health Centers complaining of hip pain. [AR 449] Plaintiff stated that the pain radiated down his right leg, and was aggravated by bending, climbing and descending stairs, and walking. [*Id.*] Plaintiff said that he had decreased mobility, difficulty initiating sleep, nocturnal awakening and pain, and tingling in his arms and legs. [*Id.*] A June 18, 2013 evaluation, however, did not reveal any hip abnormalities. [AR 443] That same evaluation found that Plaintiff's bilateral lower extremity strength was normal. [*Id.*] A January 13, 2014 evaluation likewise showed normal bilateral lower extremity strength. [AR 544]

Plaintiff's medical records also reflect diagnoses of GERD and asthma. [*See, e.g.*, AR 429, 441, 446, 448, 483, 527, 540] The record does not reflect any serious medical episodes resulting from these conditions. Plaintiff had no current symptoms of

asthma during a July 2009 examination. [AR 434] During a December 2013 examination, Plaintiff noted that he experienced some shortness of breath, but stated that it was not limiting and he only occasionally used his inhaler. [AR 528] Plaintiff's medical records indicate that his GERD was controlled with medication. [*See, e.g.*, AR 442, 457, 480, 540]

In addition to these physical ailments, Plaintiff also complains of mental impairments. Plaintiff reported during a July 2009 consultative exam that he had been diagnosed with anxiety and depression several years prior to that. [AR 430] During a December 2013 psychiatric consultation, Plaintiff reported that he had received psychological treatment ending about one year prior to the consultation. [AR 534] The examiner, Dr. John Bermudez, concluded that Plaintiff had depressive disorder, not otherwise specified, and pain disorder associated with both psychological factors and a general medical condition, chronic. [AR 536] Plaintiff attended individual counseling from at least July 17, 2015 through February 25, 2016 for memory loss, chronic pain, depression, irritability, agitation and anger. [AR 602]

At the 2016 hearing, Plaintiff testified that he experiences vertigo, but that it does not cause him to fall. [AR 52] As a result of the vertigo, Plaintiff does not completely trust his ability to walk. [AR 53] A July 20, 2015 neuropsychological evaluation conducted by Dr. Linda L. Thede noted Plaintiff's complaints of vertigo. [AR 597] According to the evaluation, Plaintiff had begun experiencing memory loss approximately one year earlier. [AR 598] This evaluation also noted that Plaintiff had been diagnosed with mild depression, had experienced problems getting along with others and has both dyslexia and dyscalculia. [AR 597-598]

9

## B. Procedural History

Plaintiff's application for DIB was initially denied on January 7, 2014. [AR 109-11] On January 15, 2014, Plaintiff completed a request for a hearing before an ALJ. [AR 112-13] A hearing was conducted before ALJ William Musseman on March 2, 2016, at which Plaintiff and vocational expert Daniel B. Best both testified.[7] [AR 27] Plaintiff was represented at the hearing by an attorney, Paul James Scheffler. [*Id.*] On March 30, 2016, the ALJ issued a decision denying Plaintiff benefits. [AR 27-37] Plaintiff timely requested a review of that decision by the Appeals Council, which denied his request for review on February 13, 2017. [AR 1-5] Plaintiff timely filed an appeal with this Court on March 15, 2017. [#1] Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## C. The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB and SSI after evaluating the evidence pursuant to the five-step sequential evaluation process. [AR 27-37] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2007, the alleged onset date. [AR 30] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and obesity. [AR 30-32] At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations. [AR 32] Following step three, the ALJ determined that Plaintiff retained the RFC to

---

[7] A hearing had previously been scheduled for December 12, 2014, but was continued so that Plaintiff could retain an attorney. [AR 27]

perform the full range of medium work. [AR 32] The ALJ provided a narrative setting forth the relevant evidence considered in determining the RFC and explaining the weight given to certain medical opinions in the record. [AR 32-35]

At step four, the ALJ found that Plaintiff had past relevant work experience as a maintenance engineer and auto body repairer. [AR 35-36] Comparing Plaintiff's RFC with the physical and mental demands of his past relevant work experience, the ALJ concluded that Plaintiff was able to perform his past relevant work as both a maintenance engineer and auto body repairer and thus was not disabled. [AR 36] Despite this finding, the ALJ continued to step five and, as an alternative basis for his determination, concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [AR 36-37] Accordingly, the ALJ determined that Plaintiff was not under a disability from December 1, 2007 (the alleged onset date) through March 30, 2016 (the date of the ALJ's decision). [AR 37]

## III. ANALYSIS

Plaintiff raises three challenges to the ALJ's decision on appeal. First, Plaintiff contends that the ALJ erred by concluding that Plaintiff was capable of performing past relevant work despite expert testimony and other facts to the contrary. [#19 at 3-5] Second, Plaintiff argues that the ALJ failed to perform a proper pain analysis. [*Id.* at 5-7] Finally, Plaintiff argues that the ALJ ignored Plaintiff's Global Assessment of Functioning ("GAF") score of 45. [*Id.* at 8-9]

11

### A. The ALJ's Findings Regarding Plaintiff's Ability to Perform Past Relevant Work

Plaintiff argues that the ALJ erred in two respects when considering Plaintiff's ability to perform past relevant work. First, Plaintiff argues that the ALJ's finding that Plaintiff had severe impairments was inconsistent with the ALJ's finding that Plaintiff was not disabled. [#19 at 3] Second, Plaintiff argues that the ALJ disregarded or otherwise gave improper weight to certain expert opinions. [*Id.* at 3-5, 9]

#### 1. The ALJ's finding of severe impairment is not inconsistent with his finding that Plaintiff was not disabled.

Plaintiff first argues that the ALJ erred because, after initially finding that Plaintiff suffered from severe impairments, "the ALJ then did a complete about face and spent the rest of his decision explaining why the claimant was *not* disabled." [*Id.* at 3] As the Commissioner properly argues, however, a finding that a claimant has a severe impairment does not mean that the claimant is disabled. [#20 at 9 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)]. Indeed, "[i]f Plaintiff's argument were correct, the sequential evaluation would be a two-step sequential evaluation, not a five-step sequential evaluation." [*Id.*]

Here, upon finding that Plaintiff had severe impairments, the ALJ properly proceeded to the next step of the sequential evaluation process. [AR 32] In determining Plaintiff's RFC, the ALJ considered the severe impairments identified at step two and Plaintiff's other non-severe medically determinable impairments and limited Plaintiff to medium work. [*Id.*] The Court thus finds no inconsistency between the ALJ's finding of severe impairments and his finding that Plaintiff was not disabled.

## 2. The ALJ did not adequately explain his treatment of certain expert testimony.

Next, Plaintiff argues that the ALJ disregarded or otherwise gave improper weight to certain expert opinions. [#19 at 3-5, 9] Specifically, Plaintiff challenges the ALJ's treatment of (1) the neuropsychological evaluation of Dr. Linda Thede, (2) the testimony of vocational expert Dr. David Best, and (3) the opinions of consulting examiner Dr. John Bermudez. [*Id.*] As a result, Plaintiff argues that the ALJ erred in concluding that Plaintiff was capable of performing his past relevant work. [*Id.*]

"An ALJ must evaluate every medical opinion in the record . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted). The regulations governing the SSA's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *Boyd v. Berryhill*, No. 17-CV-00722-MEH, 2017 WL 4877213, at *11 (D. Colo. Oct. 30, 2017); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When deciding what weight to give a medical source's opinion, the ALJ must consider the factors provided in 20 C.F.R. § 404.1527 and 416.927. *Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). While the ALJ must consider each of these factors, the ALJ need not explicitly discuss each of the factors in determining what weight to give a medical opinion. *Lauxman*, 321 F. App'x at 769 (citing *Oldham*, 509 F.3d at 1258). Nonetheless, if after considering the six factors the ALJ rejects the examining expert's opinion, the ALJ must "provide specific, legitimate reasons" for doing so. *Id.*

Plaintiff argues that the ALJ "failed to reference or even discuss the neuropsychological evaluation of Dr. Linda L. Thede." [#19 at 9] After reporting memory loss and vertigo, Plaintiff was referred to Dr. Thede "for a neuropsychological evaluation to determine [the] extent of his memory impairments." [AR 597] Based upon the results of a number of tests administered by Dr. Thede as part of her evaluation, she diagnosed Plaintiff with mild neurocognitive impairment, dyslexia and dyscalculia and assessed Plaintiff with a GAF score of 52. [*Id.*] Dr. Thede concluded that Plaintiff's "cognitive abilities are in the borderline range, and he has displayed impairment in visual and verbal memory, verbal recognition, attention, [and] working memory." [AR 601] Dr. Thede recommended that Plaintiff receive "[i]ndividual therapy for help in managing his agitation, irritability, depression, and anger" and further evaluation by a neurologist to determine whether an MRI and/or EEG may reveal structural damage to

14

the brain.[8] [*Id.*] Based upon this recommendation, Plaintiff began individual counseling two times weekly with Dr. Thede's colleague, licensed therapist Craig Mullins, to address Plaintiff symptoms of memory loss, depression, irritability, agitation and anger. [AR 602] Plaintiff submitted a letter from Mr. Mullins opining that "[Plaintiff's] symptoms of depression, irritability and anger are consistent with individuals diagnosed with Mild Neurocognitive Impairment, and [sic] are experiencing chronic pain as well as a deterioration in vocational performance/ability."[9] [*Id.*] In contrast to the ALJ's discussion of the other medical opinions in the record, the ALJ's decision does not refer to either Dr. Thede or Mr. Mullins by name or squarely address either of their opinions.

Defendant contends that the ALJ "explicitly referenced and discussed" Dr. Thede's report and Mr. Mullins's letter by citing to those documents in his discussion of

---

[8] Dr. Thede's neuropsychological evaluation constitutes a medical opinion. *See Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) (finding that, pursuant to 20 C.F.R. § 404.1527(a)(2), "medical opinions are statements from physicians that reflect judgments concerning a claimant's symptoms and diagnosis"); *Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005) (noting that doctor's "underlying diagnosis . . ., his findings of limited range of motion, and his prognosis that the impairment involved is permanent all appear to fit within the definition of medical opinion set out in § 404.1527(a)(2)").

[9] As a licensed therapist, Mr. Mullins does not appear to be an "acceptable medical source" as defined in the regulations applicable at the time of the ALJ's decision. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2015). However, the regulations expressly recognize therapists as other medical sources whose opinions may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2015). "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'" Social Security Ruling 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006). Indeed, in an appropriate case, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at 5. The Commissioner thus "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

15

the mental health findings of record and in discussing the GAF scores of record. [#20 at 18-19 (citing AR 34-35)] The ALJ's decision cites to both Dr. Thede's report and Mr. Mullins's letter as support for his statement that "[t]he record shows the claimant had not had any mental treatment since 2012 and his depression symptoms were mild." [AR 34-35 (citing AR 534, 598, 602)] Dr. Thede's report (dated July 20, 2015) and Mr. Mullins's letter (dated March 2, 2016), however, directly contradict the ALJ's statement. [AR 597, 602] Contrary to the ALJ's contention that Plaintiff had not received any mental health treatment since 2012, Plaintiff saw Dr. Thede for neuropsychological evaluation in 2015 and saw Mr. Mullins for psychological counseling from at least July 2015 through March 2016. [*Id.*] Similarly, although Dr. Thede refers to a prior diagnosis of "mild depression" and refers to Plaintiff's historical experience with "mild depressive symptoms" [AR 598], Plaintiff's score on the Beck inventory of depressive symptoms administered by Dr. Thede was "in the severe range." [AR 601] Dr. Thede and Mr. Mullins themselves refer to Plaintiff's symptoms as "depression" without characterizing them as "mild" as indicated by the ALJ. [*Compare* AR 601, 602 *with* AR 35] Furthermore, the ALJ's decision does not even reference the mild neurocognitive impairment, dyslexia, dyscalculia, and/or the limitations in visual and verbal memory, verbal recognition, attention, and working memory diagnosed by Dr. Thede, let alone explain why the ALJ's RFC did not include any limitations resulting from these impairments.

It thus is not clear from the ALJ's decision that he fulfilled his obligation to "evaluate every medical opinion in the record." *Hamlin*, 365 F.3d at 1215. To the extent the ALJ did review Dr. Thede's report and Mr. Mullins's letter, it appears that he may

16

have committed error by "pick[ing] and choos[ing] from [their] opinion[s], using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). At a minimum, the ALJ's discussion of Dr. Thede's and Mr. Mullins's opinions is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion[s] and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (quotation omitted).

Although the Court does not demand "technical perfection" by the Commissioner, the decision must allow the Court to "follow the adjudicator's reasoning . . . and [ ] determine that correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, the Court is unable to do so. Nor does this case present "the right exceptional circumstance" to allow the Court to apply the harmless error rubric and "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the [ ] matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). For example, the ALJ's decision to give great weight to the State agency psychological consultant's opinion that Plaintiff had only minor mental health impairments and "less than little weight" to consulting examiner Dr. Bermudez's opinion of moderate to severe mental impairments was based, at least in part, on the ALJ's mistaken belief that Plaintiff had not received mental health treatment since 2012—which is contradicted by Dr. Thede's report and Mr. Mullins's letter. The Court thus must remand this case for further proceedings.[10]

---

[10] The Court does not reach Plaintiff's remaining arguments, as they may be impacted by the Commissioner's review of the issues on remand. Neither party should take the Court's silence as tacit approval or disapproval of any of the remaining arguments raised by Plaintiff. Nor does the Court intend this Order to dictate the results that should be reached on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995)

## B. Plaintiff's Request for Remand with an Immediate Award of Benefits

Plaintiff requests that the case be remanded to the Commissioner for an immediate award of benefits. [#19 at 9] "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted). Where, as here, "the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand." *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). The Court thus declines Plaintiff's request that the case be remanded with an instruction for an immediate award of benefits.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Order.

DATED:  January 19, 2018

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation omitted)).